<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| THE PLASTIC SURGERY CENTER, P.A., <br><br> Plaintiff, <br><br> v. <br><br> UNITEDHEALTHCARE INSURANCE COMPANY, *et al.*, <br><br> Defendants. | Civil Action No. 24-8584 (MAS) (TJB) <br><br> **MEMORANDUM OPINION** |

<u>**SHIPP, District Judge**</u>

This matter comes before the Court upon Defendant UnitedHealthcare Insurance Company's ("Defendant") Motion to Dismiss (ECF No. 10) Plaintiff The Plastic Surgery Center, P.A.'s ("Plaintiff") Complaint (ECF No. 1-1). Plaintiff opposed (ECF No. 15), and Defendant replied (ECF No. 21). Plaintiff also submitted a Notice of Supplemental Authority (ECF No. 22), to which Defendant replied (ECF No. 23). The Court has carefully considered the parties' submissions and reaches its decision without oral argument under Local Civil Rule 78.1(b). For the reasons below, Defendant's Motion to Dismiss is granted in part and denied in part.

**I.    <u>BACKGROUND</u>**

**A.    Factual Background**[1]

Plaintiff is a New Jersey corporation engaged in the practice of plastic and reconstructive surgery. (Compl. ¶¶ 1, 4, ECF No. 1-1.) Defendant is a health insurance company that acted as an

---

[1] For the purpose of considering the instant motion, the Court accepts all factual allegations in the Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

authorized agent and administrator of a medical benefits plan ("the Plan") for one of Plaintiff's individual patients, S.R. (the "Patient"). (*Id.* ¶ 2.) Plaintiff is a non-participating, or out-of-network, healthcare provider under the Plan, which means that it is paid at a "significantly lower" rate than participating providers. (*Id.* ¶¶ 5, 20.)

The Patient required specialized medical services, specifically an intrafascicular microneurolysis and epineurectomy (the "Surgical Procedure") and consulted with Dr. Elkwood, one of Plaintiff's physician-employees. (*Id.* ¶¶ 6-10.) Plaintiff refused to perform the Surgical Procedure because the Plan's non-participating rate did not provide sufficient compensation to justify Dr. Elkwood's performance. (*Id.* ¶¶ 11-12.) On or about September 11, 2020, one of Plaintiff's other employees contacted Defendant and offered to perform the Surgical Procedure at the "in-network rate." (*Id.* ¶ 15.) On or about October 5, 2020, the parties "entered into a single case rate agreement" (the "Agreement") where Plaintiff would be paid the in-network rate for preapproved Current Procedural Technology[2] ("CPT") codes that were applicable to the Surgical Procedure, and in exchange, Plaintiff forfeited its right to balance bill the Patient.[3] (*Id.* ¶¶ 16-17.)

Plaintiff alleges that on or about October 6, 2020, pursuant to the Agreement, and in reliance on the promises and representations made by Defendant, Plaintiff performed the Surgical Procedure. (*Id.* ¶ 22.) Plaintiff billed a total of $1,648,962.00[4] for the Surgical Procedure, but

---

[2] A CPT code is a "number that identifies and describes the services performed by [a] medical provider in accordance with a systematic listing published by the American Medical Association." *Merling v. Horizon Blue Cross Blue Shield of N.J.*, No. 04-4026, 2009 WL 2382319, at *2 (D.N.J. July 31, 2009).

[3] Balance billing is a practice in the insurance sector where a patient is "subject to being billed for the difference between the provider's charges and the amount paid by [the insurance provider]." *Franco v. Conn. Gen. Life Ins. Co.*, 647 F. App'x 76, 79 (3d Cir. 2016).

[4] The total balance was comprised of $871,572 for the medical services of Dr. Elkwood and $777,390 for the medical services of Dr. Herman. (Compl. ¶¶ 24, 25.)

Defendant issued a payment of only $48,788.63.[5] (*Id.* ¶¶ 26-28.) Plaintiff sought payment of the outstanding balance, but Defendant refused. (*Id.* ¶ 29.)

### B.    Procedural Background

Plaintiff initially brought this case in the Superior Court of New Jersey Law Division – Monmouth County, and Defendant removed the case to this Court. (ECF No. 1.) The Complaint includes three counts: (1) breach of contract ("Count One"); (2) promissory estoppel ("Count Two"); and (3) negligent misrepresentation ("Count Three"). (Compl. ¶¶ 30-49.)

Defendant moves to dismiss the Complaint for three reasons: (1) the factual allegations supporting the purported contract are refuted by transcripts of the alleged calls; (2) Plaintiff's claims are expressly preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"); and (3) the Complaint fails to state a claim upon which relief can be granted. (*See generally* Def.'s Moving Br., ECF No. 10-1.)

## II.    **LEGAL STANDARD**

Federal Rule of Civil Procedure[6] 8(a)(2) "requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675

---

[5] Plaintiff's payment included $29,797.75 for Dr. Elkwood's services and $18,990.88 for Dr. Herman's services. (Compl. ¶¶ 27, 28.)

[6] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

(2009). Second, the court must identify all of the plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## III.    DISCUSSION

The Court finds that: (1) Plaintiff's claims are not preempted by ERISA; (2) Plaintiff sufficiently pleads claims for breach of contract and promissory estoppel; and (3) Plaintiff fails to sufficiently plead a claim for negligent misrepresentation. The Court addresses each finding in turn.

### A.    The Court Will Not Consider the Call Transcripts

As a preliminary matter, the Court addresses the parties' disagreement as to whether the Court should consider documents outside of the pleadings. Defendant asks the Court to consider two transcripts of phone calls made on October 5, 2020 (the "October Transcripts"), the date of the alleged Agreement. (Def.'s Moving Br. 6-8, 18.) Plaintiff opposes, challenging the authenticity

of those transcripts. (Pl.'s Opp'n Br. 2-5, 28-29, ECF No. 15 ("[Defendant] has produced transcripts from two entirely different phone calls than those referenced in the Complaint").)[7]

In addressing the parties' arguments, the Court is mindful of Rule 12(d),[8] and finds that it must not consider the October Transcripts. On a Rule 12(b)(6) motion, the Court may "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as *undisputedly authentic documents* if the complainant's claims are based upon these documents." *Guidotti v. Legal Helpers Debt Resol.*, 716 F.3d 764, 772 (3d Cir. 2013) (emphasis added) (quoting *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)). As the authenticity of the transcripts attached to Defendant's Motion to Dismiss is in dispute (Def.'s Moving Br. 6-8, 18; Pl.'s Opp'n Br. 2-5, 28-29), the Court does not consider them in its analysis. *See Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) ("When the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail."); *cf. Samra Plastic & Reconstructive Surgery v. United Healthcare Ins. Co.*, No. 23-22706, 2025 WL 444474, at *8 (D.N.J. Feb. 10, 2025) (considering transcript extraneous to the complaint where the plaintiff did

---

[7] Plaintiff's Complaint alleges that the two calls with Defendant took place on September 11, 2020 and October 5, 2020 (*see* Compl. ¶¶ 15-16), but Defendant provides the transcripts for two calls on October 5, 2020 (*see* Decl. of Matthew P. Mazzola ¶¶ 6-7, ECF No. 10-2; Ex. A, ECF No. 10-3; Ex. B, ECF No. 10-4). Plaintiff submits in its opposition papers that it has contemporaneous notes from October 5, 2020, regarding a total of seven calls with Defendant. (Pl.'s Opp'n Br. 5.) Plaintiff maintains that the Agreement was formed on calls separate from the calls for which Defendant provided transcripts. (*Id.* at 5 n.3.)

[8] "If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

"not challenge the authenticity of the transcript or its contents"). Having determined the issue of extraneous-pleading matters,[9] the Court turns to ERISA preemption.

## B.    ERISA Does Not Preempt the State Law Claims

Defendant maintains that Plaintiff's Complaint must be dismissed because its claims are subject to express preemption under § 514 of ERISA. (Def.'s Moving Br. 2, 8-15.) Specifically, Defendant argues that Plaintiff's claims all "relate to" the Plan because "the Complaint's allegations are grounded in the scope of coverage under the Plan to determine what benefits are available to [the Patient]." (*Id.* at 10.) Plaintiff argues in opposition that its claims are not preempted because it "seeks to enforce obligations independent of [the Plan]," and the Agreement's reference to an "in-network rate" does not require interpretation of the Plan. (Pl.'s Opp'n Br. 17-18.)

The stated goal of ERISA is "'to promote the interests of employees and their beneficiaries in employee benefit plans' by ensuring benefit plans [are] well managed and [will] not leave plan participants short-changed." *Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 225 (3d Cir. 2020) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983)). To ensure "that ERISA's mandates supplanted the patchwork of state law previously in place . . . Congress enacted section 514(a)—a broad express preemption provision, which 'supersede[s] any and all [s]tate laws insofar as they may now or hereafter relate to any employee benefit plan.'" *Id.* at 226 (alteration in original) (quoting 29 U.S.C. § 1144(a)). The reach of ERISA's express preemption

---

[9] While both parties also discuss the "contemporaneous notes" that Plaintiff submitted in its opposition papers regarding several phone calls between the parties on October 5, 2020 (*see* Pl.'s Opp. Br. 5; Def.'s Reply Br. 1-2, ECF No. 21), the Court similarly does not consider these notes and limits its analysis to the facts alleged in the Complaint and its exhibits at this pleading stage. *See Princeton Univ.*, 30 F.4th at 342-43 (holding that where the complaint and a document extraneous to the pleadings conflict, the district court should not have credited the extraneous document's assertions over the complaint).

provision applies not only to state statutes and regulations which "relate to" an ERISA governed employee benefit plan, but also to state "common law causes of action." *Id.* (citing *Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 294 (3d Cir. 2014)). The Supreme Court has recognized that, for the purposes of express preemption, "a state law 'relates to' an employee benefit plan if it has either (1) a 'reference to' or (2) a 'connection with' that plan." *Id.* (quoting *Shaw*, 463 U.S. at 96-97). The Third Circuit's recent decision in *Plastic Surgery Center*, provides a framework to determine whether state law claims are preempted by ERISA, which the Court lays out below. 967 F.3d at 226.

### 1.    *"Reference to"*

Claims that make "reference to" an ERISA plan include both claims that "act[ ] immediately and exclusively upon ERISA plans" and those that are "premised on" a plan. *Id.* at 230 (alternation in original) (quoting *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 319-20 (2016); *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 140 (1990)). Claims that are "premised on" a plan include: "(a) claims predicated on the plan or plan administration, e.g., claims for benefits due under a plan . . . or where the plan is a critical factor in establishing liability" and "(b) claims that involve construction of [the] plan[ ] . . . or require interpreting the plan's terms." *Id.* (internal citations and quotation marks omitted).

Here, Plaintiff's claims do not make "reference to" the Plan such that they are preempted. First, the Complaint does not rely exclusively upon an ERISA plan and is not "predicated on the plan or plan administration" or a "critical factor in establishing liability" for Plaintiff's claims. *Id.* (quoting *Ingersoll-Rand*, 498 U.S. at 139-40). The Complaint alleges that Defendant "entered into a single case rate agreement" and incurred an independent obligation to pay Plaintiff the in-network rate for certain CPT Codes associated with the Surgical Procedure. (Compl. ¶¶ 16-18,

21.) Since Plaintiff's claims are predicated on an independent contractual or quasi-contractual duty, and not on the Plan, § 514 does not preempt Plaintiff's state law claims. *See Plastic Surgery Ctr.*, 967 F.3d at 231; *see also Kindred Hosps. E., LLC v. Loc. 464A United Food & Com. Workers Union Welfare Serv. Benefit Fund*, No. 21-10659, 2021 WL 4452495, at *8 (D.N.J. Sept. 29, 2021) (collecting cases and explaining that "[t]he Third Circuit, as well as other courts, ha[ve] consistently held that where the predicate of a claim is not an ERISA plan but an independent state-law created duty, Section 514(a) does not preempt the state-law claim").

Defendant asserts that Plaintiff's claims all "relate to" the Plan because the Complaint "makes reference to Plaintiff's efforts to obtain coverage from [the Plan]." (Def.'s Moving Br. 10.) Defendant also asserts that *Plastic Surgery Center* is distinguishable because there were no benefits to out-of-network providers in that case, and here the Plan provides some coverage for non-participating providers and out-of-network benefits. (Def.'s Reply Br. 4-7.) The Complaint alleges, however, that Plaintiff "refused to perform the Surgical Procedure based on the terms of the Plan" and "[i]nstead, [Plaintiff] sought to enter into an agreement with [Defendant] wherein [Plaintiff] would perform the Surgical Procedure in exchange for an agreed-upon rate of compensation." (Compl. ¶¶ 12-13.) Simply put, the Plan is "not the source of the rights that [Plaintiff] seeks to enforce here." *Gotham City Orthopedics, LLC v. United Healthcare Ins. Co.*, No. 21-11313, 2022 WL 111061, at *4 (D.N.J. Jan. 12, 2022) (finding no preemption under ERISA where the complaint did not suggest that the plaintiff "agreed to incorporate the terms of [the defendant's] agreements with patients or be treated like an in-network provider under the plan") (emphasis omitted). Rather, Plaintiff alleges that the Agreement is separate and apart from the Plan, and the only reference to the Plan is to the in-network price, which is explored further below.

Second, Plaintiff's claims do not require construction of the Plan or interpreting the Plan's terms. As the Court previously recognized, the only reference to the Plan in the Complaint is to the in-network rate. (*See* Compl. ¶¶ 15-18, 21, 31, 36, 44.) Determining this rate would only require "reviewing the fee schedule attached to [Defendant's] in-network provider agreements." *Plastic Surgery Ctr.*, 967 F.3d at 233. It would therefore be unnecessary to impermissibly reference or examine the Plan beyond a "'cursory examination' . . . [which] do[es] not entail 'the sort of exacting, tedious, or duplicative inquiry that the preemption doctrine is intended to bar.'" *Id.* at 234 (internal citation omitted) (quoting *Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 85 (3d Cir. 2012)); *see also Premier Orthopaedic Assocs. of S. N.J., LLC v. Anthem Blue Cross Blue Shield*, 675 F. Supp. 3d 487, 492-93 (D.N.J. 2023) (declining to find express preemption of similarly pled breach of contract and promissory estoppel claims where "nothing in the [c]omplaint direct[ed] th[e] Court to consider the patient's healthcare benefit plan"). As such, the Court finds that Plaintiff's claims do not make "reference to" the Plan such that the claims are preempted.

### 2.    *"Connection With"*

Courts have focused on three inquiries to determine whether a claim has a "connection with" an ERISA plan. First, there is a "connection" if the claims "directly affect the relationship among the traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries." *Plastic Surgery Ctr.*, 967 F.3d at 235 (quoting *Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 245 (5th Cir. 1990)). But a healthcare provider, such as Plaintiff, "may not pursue its own section 502(a) cause of action" without an assignment of benefits. *Id.* at 236 (citing *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015)). As such, Plaintiff's claims are not preempted because "they arise out of a relationship ERISA did not intend to govern at all." *Id.*

Second, there is a "connection" if the claims "interfere with plan administration." *Id.* at 235 (citing *Menkes*, 762 F.3d at 295-96; *Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 385 (5th Cir. 2011)). Here, as the Court has already explained, Plaintiff's claims do not arise from the Plan, but rather from an independent single case rate agreement that Plaintiff alleges that the parties entered into over the phone. (Compl. ¶¶ 16-19.) Plaintiff's claims, therefore, "would merely result in a one-time payment of damages based on the specific agreement reached by the parties that does not impermissibly interfere with plan administration." *Plastic Surgery Ctr.*, 967 F.3d at 237 (citation omitted).

Third and finally, there is a "connection" if the claims "undercut ERISA's stated purpose." *Id.* at 235 (citing *Iola*, 700 F.3d at 84-85; *Kollman*, 487 F.3d at 149). As the Court in *Plastic Surgery Center* explained, the purpose of ERISA, "protecti[ng] plan participants and beneficiaries[,] is not advanced by extending express preemption to out-of-network providers." *Id.* at 238. Instead, consideration of ERISA's objectives support the conclusion that Plaintiff's claims are not preempted.

Having considered the facts and circumstances of the instant case, this Court declines to find that Plaintiff's state law claims have an impermissible "reference to" or "connection with" the Plan. As such, Plaintiff's state law claims are not expressly preempted by § 514.

## C. Breach of Contract (Count One)

Under New Jersey law, a breach of contract claim requires a plaintiff to allege facts showing that: (1) "the parties entered into a contract containing certain terms;" (2) the plaintiff performed its contractual obligations; (3) the defendant breached the contract; and (4) the plaintiff suffered damages because of the defendant's breach. *Goldfarb v. Solimine*, 245 A.3d 570, 577 (N.J. 2021) (quoting *Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016)).

In this case, Plaintiff has adequately alleged facts for each element of its breach of contract claim by alleging that: (1) the parties entered into a "single case rate agreement . . . wherein [Plaintiff] would be paid the in-network rate for certain preapproved CPT Codes that were applicable to the performance of the Surgical Procedure" (Compl. ¶ 16); (2) Plaintiff fulfilled its obligation by performing the Surgical Procedure (*id.* ¶ 22); (3) Defendant "failed to reimburse [the Plaintiff] at its 'in-network rate' for the CPT Codes billed" (*id.* ¶¶ 27-28); and (4) Plaintiff suffered damages because of Defendant's breach (*id.* ¶ 34).[10]

Defendant argues that the Complaint fails to adequately allege a contract containing certain terms, emphasizing that Plaintiff fails to allege the price that the agreement contemplated by relying on references to the "in-network rate," which Plaintiff never defines. (*See* Def.'s Moving Br. 18-19 (citing Compl. ¶¶ 16-17).) Plaintiff responds, maintaining that the parties agreed on the essential terms, including the price at the in-network rate and the services to be performed by Plaintiff's surgeons through the CPT Codes. (Pl.'s Opp'n Br. 27.) The Court finds that Plaintiff's allegations, which reference the in-network rate and specify certain CPT Codes, are sufficient to establish an agreement between the parties.

The Third Circuit, in *Plastic Surgery Center*, found that a medical provider plaintiff adequately pled breach of contract where it alleged that a defendant plan administrator made an

---

[10] While Defendant argues that Plaintiff fails to identify the consideration at issue, the cases that Defendant cites are inapposite, as they cite to analyses of unjust enrichment claims and not breach of contract claims. (*See* Def.'s Moving Br. 22 (citing *Broad St. Surgical Ctr. LLC v. UnitedHealth Grp., Inc.*, No. 11-2775, 2012 WL 762498, at *8 (D.N.J. Mar. 6, 2012); *Rowe Plastic Surgery of N.J., L.L.C. v. Aetna Life Ins. Co.*, No. 23-8083, 2024 WL 4315128 (2d Cir. Sept. 27, 2024); *Rowe Plastic Surgery of N.J., L.L.C. v. United Healthcare*, No. 23-4352, 2024 WL 4309230 (E.D.N.Y. Sept. 26, 2024); *Rowe Plastic Surgery of N.J., L.L.C. v. Aetna Life Ins. Co.*, No. 23-8529, 2024 WL 382143, at *1-2 (S.D.N.Y. Feb. 1, 2024)).) In any event, a benefit was conferred to the Patient, and "[a]s long as a contract is bargained for by the promisee, it is immaterial that the benefit of the exchange runs to a designated third[-]party beneficiary." *Cont'l Bank of Pa. v. Barclay Riding Acad., Inc.*, 459 A.2d 1163, 1172 (N.J. 1983).

agreement with plaintiff to pay for services of an insured patient's surgery at an in-network level. 967 F.3d at 231-32. Even though the plaintiff medical provider in *Plastic Surgery Center* did not provide an exact price term in the agreement, the Court found sufficient the plaintiff's allegations that the parties agreed that the plaintiff would perform the surgeries in exchange for payment from the defendant plan administrator for a "reasonable amount" and at the in-network level. *See id.*

The Third Circuit's finding applies with equal force to Plaintiff's case. Even though Plaintiff does not allege that the Agreement contained a specific dollar amount, it has alleged that the parties entered into a single case rate agreement in which the parties agreed that Plaintiff would be paid the in-network rate for certain preapproved CPT Codes applicable to the surgery. (Compl. ¶¶ 15-16.) At the pleading stage, as this Court has previously found, a plaintiff's reference to the in-network rate as the compensation for medical procedures based on CPT Codes suffices as a certain term of the agreement.[11] *E.g.*, *Samra Plastic & Reconstructive Surgery v. Cigna Health & Life Ins. Co.*, No. 23-22521, 2024 WL 3444273, at *6 (D.N.J. July 17, 2024) (finding unpersuasive the defendant plan administrator's argument that the agreement lacked a definite price term because the parties specified a billing method pursuant to identified CPT Codes); *see also Baer v. Chase*, 392 F.3d 609, 619 (3d Cir. 2004) (citing *Moorestown Mgmt., Inc. v. Moorestown Bookshop, Inc.*, 249 A.2d 623, 628 (N.J. Ch. 1969)) (explaining that a contract "is not unenforceable if the

---

[11] The two cases that Defendant cites to support its argument that there are not "certain terms" to enforce here are inapposite. (*See* Def.'s Moving Br. 18.) In both *Premier Orthopaedic Assocs. of S. NJ, LLC v. Anthem Blue Cross Blue Shield* and *East Coast Spine Joint v. Anthem Blue Cross Blue Shield*, the plaintiffs based their claims for breach of an implied contract entirely on preauthorization and did not include information concerning the types of medical services or the costs that the authorization allegedly covered. 675 F. Supp. 3d 487, 494 (D.N.J. 2023); No. 22-04841, 2023 WL 3559704, at *6 (D.N.J. Apr. 27, 2023). Here, Plaintiff not only specifies the rate of compensation, but it also alleges the CPT Codes which cover the surgery for which the rate applies. (*See* Compl. ¶¶ 15-16.)

parties specify a practicable method by which they can determine the amount"). In any event, and as the New Jersey Supreme court has held, "the precise terms of [an] obligation are factual matters better fleshed out in discovery." *Gotham City Orthopedics, LLC*, 2022 WL 111061, at *5 (citation omitted). Plaintiff has therefore plausibly pled a breach of contract claim, and the Court, accordingly, denies Defendant's Motion to Dismiss Count One of the Complaint.

### D.     Promissory Estoppel (Count Two)

Under New Jersey law, a claim of promissory estoppel "is made up of four elements: (1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment." *Goldfarb*, 245 A.3d at 577 (quoting *Toll Bros., Inc. v. Bd. of Chosen Freeholders of Burlington*, 944 A.2d 1, 19 (N.J. 2008)). Defendant challenges the first element—that there was a clear and definite promise. (Def.'s Moving Br. 16-21.)

Here, Plaintiff alleges that Defendant represented and promised that it would pay the in-network rate for specific CPT Codes involved in the Surgical Procedure. (*See* Compl. ¶¶ 18, 35-36.) The Court finds that Defendant's promise is sufficiently clear and definite to state a claim of promissory estoppel. Plaintiff alleges that Defendant's representative authorized CPT Codes and promised Plaintiff that it would pay the in-network rate for the Surgical Procedure. (Compl. ¶¶ 16, 36.) In particular, during the phone calls between the parties' representatives, Plaintiff identified the member patient, the specific Surgical Procedure, and the Surgical Procedure's required preauthorization codes, for the in-network rate, in exchange for forfeiting its right to balance bill on the patient. (*Id.* ¶¶ 15-17.) The promise was not subject to change upon conditions, and the CPT codes were agreed upon. (*Id.* ¶¶ 17-18); *cf. Del Sontro v. Cendant Corp.*, 223 F. Supp. 2d 563, 569, 576 (D.N.J. 2002) (finding an agreement indefinite because it explicitly stated that it

was "subject to change at any time"). At any rate, "in considering whether a promise was clear and definite for a promissory estoppel claim, New Jersey courts 'have tended to relax strict adherence . . . in favor of a more equitable approach.'" *United Cap. Funding Grp., LLC v. Remarkable Foods, LLC*, No. 21-3291, 2022 WL 2760023, at *4 (D.N.J. July 14, 2022) (quoting *Pop's Cones, Inc. v. Resorts Int'l Hotel, Inc.*, 704 A.2d 1321, 1325-27 (N.J. Super. Ct. App. Div. 1998)).

The Court also finds that Plaintiff has adequately alleged that Defendant expected Plaintiff would rely on such a promise and that Plaintiff did in fact rely on that promise. Plaintiff initially refused to perform the Surgical Procedure and agreed to perform the procedure only after it was able to negotiate the in-network rate of compensation with Defendant. (Compl. ¶¶ 11-22.) As such, the timeline of events as pled adequately alleges reasonable reliance on Defendant's communications. The Court, accordingly, denies Defendant's Motion to Dismiss Count Two of the Complaint.

### E.    Negligent Misrepresentation

Plaintiff has alleged that Defendant's representation that it would pay Plaintiff at the in-network rate for the surgical procedure constituted a negligent misrepresentation and that "[Defendant] owed a duty to [Plaintiff] not to make false representations." (*Id.* ¶¶ 43-49.) Defendant argues, *inter alia*, that Plaintiff has not adequately alleged an independent duty of care owed by Defendant to Plaintiff. (Def.'s Moving Br. 23-24; Def.'s Reply Br. 11.) Plaintiff argues in opposition that it has pled that Defendant owed a duty of care to Plaintiff by alleging that the parties were in privity of contract through the Agreement. (Pl.'s Opp'n Br. 34.)

Under New Jersey law, a claim of negligent misrepresentation requires a plaintiff to show that a defendant negligently made an incorrect statement, upon which the plaintiff justifiably

14

relied, and the plaintiff sustained an injury as a result of that reliance. *Green v. Morgan Props.*, 73 A.3d 478, 493-94 (N.J. 2013). Where a plaintiff and defendant have a contractual relationship, the economic loss doctrine provides that "a tort remedy [will] not arise from [the parties'] contractual relationship unless the breaching party owes an independent duty imposed by law." *Saltiel v. GSI Consultants, Inc.*, 788 A.2d 268, 278-80 (N.J. 2002) (stating "that under New Jersey law a party cannot maintain a negligence action, in addition to a contract action, unless the plaintiff can establish an independent duty of care"). A plaintiff may not proceed with a negligent misrepresentation claim for "false promises to perform as contracted." *Cudjoe v. Ventures Tr. 2013I-H-R by MCM Cap. Partners, LLP*, No. 18-10158, 2019 WL 949301, at *4 (D.N.J. Feb. 26, 2019) (quoting *Cioni v. Globe Specialty Metals, Inc.*, 618 F. App'x 42, 47 (3d Cir. 2015)); *see also Shinn v. Champion Mortg. Co.*, No. 09-13, 2010 WL 500410, at *4 (D.N.J. Feb. 5, 2010) (noting that "the mere failure to fulfill obligations encompassed by the parties' contract is not actionable in tort").

Here, Plaintiff's allegations constitute false promises to perform as contracted, and therefore are barred by the economic loss doctrine. Plaintiff argues that "it was in privity of contract with [Defendant] through the Agreement" (Pl.'s Opp'n Br. 34), but it does not allege or argue an "independent duty imposed by law" separate from the Agreement. *See Saltiel*, 788 A.2d at 278-80. Because Plaintiff's allegations speak directly to Defendant's performance under the Agreement, Count Three is therefore barred by the economic loss doctrine. *See Montclair State Univ. v. Oracle USA, Inc.*, No. 11-2867, 2012 WL 3647427, at *11 (D.N.J. Aug. 23, 2012) (dismissing negligent misrepresentation claim where the operative complaint relied on obligations created by the parties' agreement and therefore was not premised on an independent duty).

## IV.    <u>CONCLUSION</u>

For the reasons set forth above, Defendant's Motion to Dismiss is granted in part and denied in part. The Court will issue an Order consistent with this Memorandum Opinion.


_____
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE